## SANDERS v. UNITED STATES.

### No. 45469.

Court of Claims.

May 7, 1945.

490

494

James E. Grigsby, of Oklahoma City, and Thomas P. Gore, of Washington, D. C., for plaintiff.

William A. Stern, II, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

The question presented is whether the defendant unreasonably delayed plaintiff in the completion of the contract of July 9, 1936, by failing to exercise proper diligence and to furnish with reasonable promptness an adequate number of skilled and semi-skilled workmen, and in declining for an unreasonable length of time to release plaintiff from the requirements of art. 20 of the contract (finding 4) on account of the failure or inability of the Employment Service to furnish or refer sufficient workmen to properly man the job.

We think defendant did unreasonably delay plaintiff. The facts established by the evidence show that plaintiff was seriously delayed in the completion of the contract for want of an adequate number of skilled workmen and that defendant delayed unreasonably in obtaining information as to workmen available locally for referral to the job from relief and unemployed rolls. A very large number of unemployed skilled workmen were available locally and in surrounding counties in Oklahoma, many were on the relief rolls, and others were on the rolls of the twenty-seven employment service offices in Oklahoma. If the workmen who were available for referral had been promptly referred by the employment service upon plaintiff's requisitions, as the contract contemplated would be done, plaintiff would have been able to complete the contract work by or before June 23, 1937, the expiration date of the contract time as extended by an extra work order.

The facts also show that defendant delayed unreasonably in acting upon and granting plaintiff's protests and requests made continuously from September 21, 1936, that such workmen be furnished or that he be released from the requirements of art. 20 in order that he might directly obtain and employ such workmen who were available and could have been obtained in large numbers locally and throughout the State of Oklahoma. When, on March 26, 1937, defendant waived the employment service requirement of the contract plaintiff immediately and continuously thereafter greatly increased his force of skilled workmen in substantial accord with the requirements of the work, but due to the delay which had occurred as a result of his inability to obtain such workmen through the employment service he was unable to complete the work on time although he made every effort to do so. There was a delay of 73 days when the work was completed on September 7, 1937. This delay was due to the fault of the defendant and was without the fault or negligence of plaintiff.

Except for the delay caused by the above-mentioned failures of defendant plaintiff would have been able to complete the work on or before the expiration date of the contract as extended. Since the delay was due to the failure of defendant to fulfill the duties required of it under art. 20 of the contract there was a breach thereof, and plaintiff is entitled to recover the extra costs and damages amounting to $22,350.41 occasioned by such delay (finding 28).

Plaintiff contends that if the Employment Service had been diligent and if the available skilled workmen had been referred with reasonable promptness or if, in the circumstances, he had been relieved at the proper time of the requirement that he obtain such workmen through the employment service office, he could and would have completed the work, including the amount of work required under change order 14, within the original contract time of 270 days and substantially in accordance with his original progress schedule. This is probably true, as the Administrator of the U. S. Housing Authority concluded from the evidence before him, but in the change order given April 10, 1937, and formally issued August 30, 1937, the parties agreed

upon a new contract period for completion of 330 days which expired June 23, 1937. The change order calling for additional work and allowing 60 days additional time, by reason thereof, cannot be regarded in whole or in part as merely an extension of time by the defendant on account of delay in connection with the original contract work, if it had been work such as would not operate to relieve the Government of liability for damages for breach of its contract by causing the delay for which such an extension is granted. Cf. Seeds & Derham v. United States, 92 Ct.Cl. 97. Under the terms of the order which was accepted by plaintiff and his sureties in writing, the additional 60 days agreed upon became a part of the original contract period of 270 days for completion for any and all purposes. The change order was made under and fulfilled the requirements of the equitable adjustment provisions of the contract. It was without restriction or qualification and the additional time applied to the completion of the original as well as to the additional work specified therein. Both parties became entitled to the full benefit of the new contract period of 330 days and either party could point to it in defense of a claim by the other party for damages for delay. Blair v. United States, 321 U.S. 730, 734, 64 S.Ct. 820, 88 L.Ed. 1039.

■ Counsel for defendant contend, in addition to the contention that the Employment Service referred to in art. 20 acted throughout with reasonable diligence, promptness and efficiency, that plaintiff's delay in completing the superstructure contract was primarily caused by an existing strike of union workmen, formal notice of which was served on defendant's employment service January 9, 1937, and that defendant was not responsible in damages for such delay. There was a strike when certain of the union workmen who had been obtained through the unions and employed by plaintiff on the foundation contract quit work for the reason stated in the findings and the unions refused to furnish plaintiff skilled union workmen on the contract in suit, but under the contract plaintiff was entitled to use nonunion skilled workmen and he was required to obtain such workmen through the employment service unless and until he was released from that requirement. The plaintiff, although authorized by art. 20 to do so, was not required by that article to obtain the necessary skilled and semi-skilled workmen through or from the unions, but could secure them through the employment service. He endeavored to do so without success. However, upon receipt on January 9, 1937, of formal notice from the Oklahoma Building Trades Council that a strike existed on the project the Employment Service ceased and declined further to select and refer workmen on plaintiff's requisitions unless such workmen voluntarily came to the employment service office, asked to be referred, and signed a statement that he had been advised of the existence of the strike. The Employment Service took this action under the Wagner-Peyser Act, 48 Stat. 113. As a result of this situation plaintiff was able to obtain only a very few skilled workmen through the employment service office, due evidently to the fact that available nonunion workmen did not wish to sign a document which in effect amounted to a request that they be employed on a project on which a strike existed. Except for the requirement of art. 20 and the conditions imposed by the employment service on referrals, plaintiff on and after January 9, 1937, could have obtained and employed an adequate number of workmen to carry on the work, and he did so when, on March 26, 1937, defendant released him from the requirements of art. 20 of the contract. Defendant delayed unreasonably in taking this action.

■ We think it was intended that neither the Wagner-Peyser Act nor art. 20 of the contract should operate, under such circumstances as are here presented, to hamper a contractor in employing on a work-relief project workers who were without jobs and who were willing to work thereon if employed directly by the contractor. That plaintiff could have obtained such workmen is shown by the fact that upon being released from the requirements of art. 20, that he obtain skilled workmen through the employment service, he immediately increased the number of workmen by 114 men and soon thereafter the number of workmen were increased by 224 men. All the additional workmen, except a few bricklayers (all of the 85 houses called for by the contract were of brick construction), were obtained from Oklahoma City and surrounding counties as a result of plaintiff's advertisements in local papers for skilled workers in various classes.

There is in the record reference to some bad weather in February 1937 and to a controversy from December 28, 1936 to March 13, 1937, with reference to a drawing for installation of boilers and steam lines. The boilers were promptly installed by plaintiff and no change was necessary since the drawing as submitted was approved March 13, 1937. The evidence satisfactorily shows that completion of the contract work as a whole was not delayed either by bad weather or by the boiler controversy.

Plaintiff is entitled to recover $22,350.41 and judgment will be entered accordingly. It is so ordered.

WHALEY, Chief Justice, and MADDEN and WHITAKER, Judges, concur.

JONES, Judge, took no part in the decision of this case.